UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF JOHN C. SULLIVAN,                     Case  No. 08-14719

            Plaintiff,                          Sean F. Cox
vs.                                             United States District Judge

FORD MOTOR COMPANY, *et al.*,                   Michael Hluchaniuk
                                                United States Magistrate Judge

            Defendants.
_____/

**REPORT AND RECOMMENDATION
MOTION TO AFFIRM (Dkt. 12)
AND MOTION FOR SANCTIONS (Dkt. 24)**

## I.    PROCEDURAL HISTORY

This matter arises from a probate dispute about the decedent's life insurance

proceeds and stock savings plan benefits.  Plaintiff, the Estate of John C. Sullivan,

filed a petition in probate for the release of proceeds from a stock savings plan and

a life insurance policy.  Defendants removed this matter to federal court on

November 7, 2008 based on a federal question, specifically, that the life insurance

policy and stock savings plan benefits are governed by the Employee Retirement

Income Security Act of 1974 (ERISA).  (Dkt. 1).  Defendant Metropolitan Life

Insurance Company, Inc. (MetLife) is the administrator of the Ford Motor

Company Life Insurance plan (Life plan).  (Dkt. 5, 10).  Defendant Ford Motor

Company (Ford) administers the Ford Motor Company Savings and Stock

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

Investment plan (SSIP plan).  (Dkt. 2, 11).  Defendants each filed answers to the

complaint and the administrative records relating to the respective claims.  (Dkt. 2,

5, 10, 11).

On April 10, 2009, Ford filed a motion to affirm its administrative decision.

(Dkt. 12).  Plaintiff, the Estate, filed a response on May 1, 2009 and Ford filed a

reply on May 14, 2009.  (Dkt. 13, 14).  On May 21, 2009, this motion was referred

to the undersigned by District Judge Sean F. Cox.  (Dkt. 17).  The Court held a

hearing on June 23, 2009 and ordered that Ford and the Estate file supplemental

briefs on the issue of consequential damages.  (Dkt. 20).  Supplemental briefs were

filed on July 23, 2009.  (Dkt. 22, 23).

After the supplemental briefs on damages were filed by the Estate and Ford,

MetLife filed a brief on the damages issue, along with a motion for sanctions based

on the Estate's newly asserted claim for consequential damages against MetLife.

(Dkt. 24).  On August 3, 2009, the motion for sanctions was also referred to the

undersigned.  (Dkt. 26).  The Estate filed a response on August 3, 2009 and

MetLife filed a reply on August 4, 2009.  (Dkt. 27, 28).  The Court held a hearing

on the motion to affirm, the damages issue, and the motion for sanctions on

September 23, 2009. (Dkt. 35).  These matters are now ready for report and

recommendation.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

## II.     FACTUAL BACKGROUND AND PARTIES' DISPUTE

The facts are largely undisputed, but the parties disagree as to the result dictated by the facts and the language in the plan documents.  Mr. Sullivan is a retired Ford Motor Company salaried employee.  (Dkt. 11, p. 0004).  As a salaried employee, Mr. Sullivan was eligible to participate in the Ford Motor Company SSIP.  (Dkt. 11, pp. 00034).  The SSIP is a qualified employee benefit plan as defined under ERISA and is a supplemental savings plan that provides employees with a convenient way to save, invest and achieve long-term financial goals.  (Dkt. 11, pp. 0032, 0083, 0165, 0033).  Employees are eligible to contribute to the SSIP Plan "as of the first day of the second month after [their] original date of hire." (Dkt. 11, pp. 0034).  Participation in the SSIP Plan is voluntary, and an employee must elect to make contributions.  (Dkt. 11, pp. 0035).  Participants are encouraged to designate a beneficiary of their SSIP assets.  (Dkt. 11, pp. 0035, 0134).  If the participant fails to designate a beneficiary, the SSIP Plan provides for disbursement of the SSIP benefits to either the named beneficiary under Ford's group term life insurance plan or the estate of the deceased participant.  (Dkt. 11, pp. 0035) ("If you're not married and you have coverage under Ford's group term life insurance plan...at the time of your death, assets in your SSIP account will be distributed to the person(s) entitled to receive your benefits under the Company's group term life insurance plan, unless you designate someone else.").

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

Mr. Sullivan retired from Ford effective February 1, 2007. (Dkt. 11, pp. 0008). Two weeks later, he passed away. (Dkt. 11, pp. 0004). Mr. Sullivan was not married when he died and did not designate a beneficiary of his SSIP benefits prior to his death. (Dkt. 11, pp. 0011-12). He did, however, have a group term life insurance plan through Ford. (Dkt. 10, pp. 37, 121, 217-8). On November 2, 1989, Mr. Sullivan had completed a designation of beneficiary form under the Ford Life Plan naming Akemi N. Sullivan, his wife at the time, to receive his group life benefits. (Dkt. 10, p. 228). The Sullivans subsequently divorced and at the time of the divorce there was a minor child. The judgment of divorce required Mr. Sullivan designate Kevin Sullivan as trustee of the minor child to secure the child support. (Dkt. 10, p. 232). On October 10, 1996, John Hancock Mutual Life Insurance Company (the predecessor to MetLife) wrote to Mr. Sullivan and advised that the November 2, 1989 designation did not comply with the provisions of the judgment of divorce. (Dkt. 10, p. 227). On October 11, 1996, Mr. Sullivan signed a new designation of beneficiary form designating his minor child to receive group life benefits up to $50,000 and designating Kevin P. Sullivan, Trustee to receive life insurance benefits in excess of $50,000 in trust for the minor child. (Dkt. 10, p. 226). On October 31, 1996, John Hancock advised Mr. Sullivan that the October 11, 1996 designation was not acceptable because no trustee documents were provided and enclosed another designation of beneficiary form for Mr.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

Sullivan to complete along with instructions as to the proper method of designating a trustee. (Dkt. 10, p. 225). Mr. Sullivan never corrected the defect regarding the designation of beneficiary. Given that Mr. Sullivan was unmarried and failed to designate a beneficiary of his SSIP benefits prior to his death, the benefits, pursuant to the SSIP Plan, were to "be distributed to the person(s) entitled to receive [his] benefits under [Ford's] group term life insurance plan." (Dkt. 10, pp. 0035; Dkt. 11, p. 16).

On April 11, 2007, the Estate sent a letter to defendants requesting the disbursement of Mr. Sullivan's regular retirement lump sum payout to the Estate. (Dkt. 10, pp. 52-3). The Estate sent a similar letter to Fidelity Investments on April 11, 2007, seeking disbursement of Mr. Sullivan's SSIP benefits to the Estate. (Dkt. 10, p. 54). Ford responded to the Estate's letter by processing its claim for the regular retirement lump sum pay out. The Estate was provided with a lump sum check in October 2007. (Dkt. 11, p. 0003; Dkt. 10, p. 145). Ford did not grant the Estate's request for the SSIP benefits because the Estate was not the designated beneficiary of Mr. Sullivan's SSIP benefits. (Dkt. 11, pp. 0001, 0011-12, 0022, 0035, 0134). And, the Estate was not the designated beneficiary of Sullivan's insurance proceeds. (Dkt. 10, pp. 17, 225-7 ). Thus, according to defendants, the Estate was not entitled to the life insurance proceeds or the SSIP benefits. *Id*.

5

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

The Estate made another request for the disbursement of Mr. Sullivan's SSIP benefits on July 14, 2008. (Dkt. 11, p. 0014). Ford's attorney sent a letter to the Estate's counsel advising that the Estate was not the proper beneficiary of Mr. Sullivan's SSIP benefits. (Dkt. 11, p. 0022). Specifically, counsel for the Estate was advised that "because Mr. Sullivan did not have an alternate beneficiary form on file and was unmarried at the time of his death, the SSIP account balance [would] be paid to the life insurance beneficiary[.]" *Id*.

The Estate takes the position that MetLife essentially admitted or decided who the beneficiary was when it asked the Estate to submit the following pursuant to its May 3, 2007 letter:

> "Our records indicate that the trustee under the Last Will and Testament of John C. Sullivan is to receive the group life insurance proceeds. To file claim, please submit either a copy of the Will and certified copy of the Estate papers evidencing probate of the Will, or a certified document naming a trustee. In addition, please have the appointed executor or trustee complete the enclosed claimant statement and return it in the enclosed envelope along with a certified copy of the Death Certificate of John C. Sullivan."

(Dkt. 10). According to the Estate, MetLife determined that the beneficiary of the life insurance proceeds was "the Estate through the Testamentary Trust of the Last Will and Testament of John C. Sullivan." Thus, plaintiff asserts, the Estate was the designated beneficiary of Mr. Sullivan's SSIP benefits as "verified" by MetLife

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

through its May 3, 2007 letter.  After the Estate filed its claim with MetLife, the Estate asserts that, "Ford was obligated to either accept under its SSIP Plan the original beneficiary designation of the SSIP Plan as submitted by the decedent on October 11, 1996 or affirm the beneficiary designation of the group life insurance carrier's distribution instructions, which in both cases, designated the Trustee of the Testamentary Trust, Kevin Sullivan, on behalf of the Estate, to receive the benefits."

According to MetLife, the Estate's counsel erroneously contends that Mr. Sullivan "designated the Estate via a Testamentary Trust as the beneficiary of his SSIP benefits and the Policy proceeds."  Rather, according to MetLife, the last beneficiary designation that Mr. Sullivan completed was applicable only to the Ford Life Insurance Plan and designated S____ K. Sullivan, Decedent's minor daughter for group life benefits up to $50,000 and for group life benefits above $50,000:

> "Kevin P. Sullivan Son"

> "Trustee: Kevin P. Sullivan"

(Dkt. 24, Ex. D).  This designation was, however, rejected by John Hancock:

> If you have a Trustee for the benefit of your child you will need to set up a Trust with a Bank or Attorney and use the standard wording for a Trust, which can be found on the reverse side of the Beneficiary Form.

7

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

(Dkt. 24, Ex. E.).  According to MetLife, there was no indication that a testamentary trust was in existence.  Rather, the judgment of divorce required Mr. Sullivan to designate "Kevin Sullivan as trustee for the minor child."  (Dkt. 24, Ex. B).  Simply, no designation was ever submitted by Mr. Sullivan under the Ford Stock Plan, and the Estate was never a designated beneficiary.

## III.   HEARINGS

The Court held a hearing on Ford's motion to affirm on June 23, 2009. (Dkt. 23).  In attendance were counsel for the parties and Ethan Dunn, an attorney and guardian ad litem for the minor child, who is not a party to this suit.  At the hearing, counsel for Ford conceded that Ford's letter denying SSIP benefits to the estate was deficient in that it did not contain the standard ERISA claim procedure language.  (Dkt. 20, p. 5).  There was initially some discussion at the hearing about the possibility of remanding this matter back to the administrator.  The Estate argued in favor of that procedure while Ford asserted that it would be a waste of time because Ford would distribute the SSIP benefits to whomever MetLife determines is the life insurance beneficiary.  (Dkt. 20, pp. 9-10).  Without such a determination, sending the matter back to the administrator would simply further delay the distribution of SSIP benefits.  (Dkt. 20, p. 10).  This is so, according to Ford, because it is undisputed that Mr. Sullivan did not name a beneficiary or have an alternate beneficiary and was unmarried at the time of death, and, under the

8

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

SSIP plan, SSIP benefits would be paid to the beneficiary of the life insurance. Since MetLife could not determine who the life insurance beneficiary was, because there was not a proper beneficiary designation on file, Ford was stuck and could not distribute the SSIP benefits until MetLife (or the Court) made a decision about the life insurance beneficiary. (Dkt. 20, p. 12). Simply, if MetLife were to make a decision regarding the beneficiary, Ford would follow suit and distribute the SSIP benefits to the same person(s). (Dkt. 20, pp. 13, 30-31).

MetLife denied the Estate's claim that it was the beneficiary of the life insurance policy, concluding that it could not rely on the ambiguous beneficiary designation that had been rejected by John Hancock, and no other beneficiary designation was on file with MetLife. (Dkt. 20, pp. 15-16; Dkt. 10, p. 106). Under the policy, MetLife has discretion to pay the proceeds to the surviving spouse, the children, the parents, or the estate. (Dkt. 20, p. 19). However, if MetLife made such a decision, it could be subject to a lawsuit asserting that the beneficiary designation, although rejected by John Hancock, should be controlling under equitable principles. (Dkt. 20, pp. 19-20). Given the potential competing claims, MetLife determined that the policy proceeds should be the subject of an interpleader, but before that could be filed, the Estate filed a petition in probate court for distribution of the life insurance and SSIP benefits, which was ultimately removed to federal court. (Dkt. 20, p. 16; Dkt. 1; Dkt. 5). At the June 23 hearing,

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

it became apparent that the parties were at a stalemate because plaintiff was asserting a claim for damages against defendants, in addition to the claims for benefits, and because the Estate never appealed the MetLife decision to deny benefits to the Estate.  (Dkt. 20, p. 17).[1]

Counsel for the Estate and Mr. Dunn agreed that they could resolve how the life insurance proceeds would be distributed amongst the claimants.  (Dkt. 20, pp. 26-28, 31).  If that were the case, the only remaining issue for the Court to decide would be the damages claim.  At the hearing, the Estate's counsel did not object to MetLife's assertion or the statements of the Court that no damages claim had been asserted against MetLife.  (Dkt. 20, pp. 32-33, 35-36).  As such, the Court ordered the Estate and Ford to file supplemental briefs on the issue of damages by July 23, 2009.  (Dkt. 20, p. 36).  The Estate and Ford filed their briefs and shortly thereafter, MetLife filed a motion for sanctions against the Estate, based on the Estate's assertion of a damages claim against MetLife in its supplemental brief. (Dkt. 24).

---

[1] Counsel for MetLife indicated that he could move to dismiss plaintiff's claims against MetLife for failure to exhaust administrative remedies, but was not interested in so doing, at that time, because MetLife simply want to interplead the funds and be dismissed from the lawsuit.  MetLife does not dispute that the benefits are payable, it simply wants to pay the money into the Court for distribution as the Court deems appropriate.  (Dkt. 20, pp. 18-19).

Report and Recommendation
Motion to Affirm; Motion for Sanctions
10     *Estate of Sullivan v. Ford Motor Co.*; 08-14719

The Court held a second hearing on September 23, 2009 on the issues of Ford's motion to affirm, the damages claims, and MetLife's motion for sanctions. (Dkt. 35).  Ford reiterated its position that its hands were tied until MetLife distributed the insurance policy proceeds and it would follow suit.  (Dkt. 35, p. 5). MetLife asserted that the Estate, despite previously agreeing that it had no damages claim against MetLife, was now asserting a damages claim.  And, under these circumstances, the Estate would not allow MetLife to deposit the funds and be released from the suit, whereby the Court would decide how the funds were distributed amongst the claimants.  (Dkt. 35, pp. 9-10).  According to the Estate, it was not pursuing damages against MetLife, but rather, was pursuing a claim for attorney fees under ERISA, which the Estate believes it is entitled to because the Estate is the proper beneficiary.  (Dkt. 35, p. 12).  However, MetLife was never called on to decide who the proper beneficiary is; rather, it only decided that the Estate was *not* the beneficiary.  (Dkt. 35, pp. 17-18).

As counsel for the Estate and Mr. Dunn acknowledged on the record, between the two of them, they represent all the potential claimants.  (Dkt. 35, p. 12).  According to counsel for the Estate, he and Mr. Dunn had already formulated a settlement as to the distribution of funds amongst the claimants.  (Dkt. 35, p. 12). Thus, the Court directed Mr. Dunn and counsel for the Estate to file a stipulation stating that they represent all the potential claimants, they waive a determination of

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

the beneficiary, and that they have agreed to a disposition of the insurance
proceeds and SSIP benefits amongst the claimants.  (Dkt. 35, p. 16).  On
September 25, 2009, counsel for the Estate and Mr. Dunn filed a "stipulation for
beneficiary pay out" in which they stipulated that the Estate of John C. Sullivan is
the "beneficiary of the Metropolitan Group Life Insurance Policy proceeds that is
the subject of this suit."  (Dkt. 33).  Counsel for the Estate and Mr. Dunn also
stipulated that they "have no objection to Ford Motor Company distributing the
SSIP Plan Stock that is also subject to this lawsuit to the Estate" and that the Estate
and Mr. Dunn, on behalf of the minor child, waive "any claim between these
parties only as to who the beneficiary is for the Metropolitan Group Life Insurance
Policy."  (Dkt. 33).

## IV.    ANALYSIS AND CONCLUSIONS

The undersigned suggests that claims or disputes at issue in this case cannot
be resolved simply by an affirmative or negative recommendation as to the two
pending motions in this matter.  Rather, the undersigned recommends that the
Court allow MetLife and Ford to deposit the life insurance proceeds and SSIP
stock proceeds into the Court, that MetLife and Ford be dismissed from this case
with prejudice, and that counsel for the Estate pay MetLife's attorney fees and
costs  reasonably incurred after June 23, 2009.  The undersigned further

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

recommends that the Estate's claims for damages and attorney fees against both defendants be dismissed with prejudice.

A.   The Estate Is Not a Named Beneficiary

While this case is not technically an interpleader action, it is more akin to an interpleader than a typical claim and appeal for ERISA benefits.  Thus, the undersigned suggests that the reasoning underpinning interpleader actions should be applied here to both the life insurance proceeds and the SSIP benefits.  An interpleader action typically proceeds in two stages.  *Life Ins. Co. of North America v. Simpson*, 2009 WL 2163498, *4 (W.D. Tenn. 2009), citing, *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 642 (6th Cir. 2007).  During the first stage, "the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader."  *Simpson*, at *4, citing, *High Tech. Prods.*, 497 F.3d at 642.  During the second stage, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial."  *Simpson*, at *4, citing, *High Tech. Prods.*, 497 F.3d at 642.

In this case, the second stage has apparently been resolved by the competing claimants, although the precise distribution of proceeds is unclear from the

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

stipulation filed with the Court.  (Dkt. 33).  As to the "first stage," the only real

dispute[2] is whether the Estate is a named beneficiary of the MetLife insurance

policy.  As set forth above, the Estate argues that it is the named beneficiary and

MetLife takes the position that the Estate was not the named beneficiary and that it

is potentially subject to competing claims.  The undersigned suggests that MetLife

is correct.  On November 2, 1989, Mr. Sullivan had completed a designation of

beneficiary form under the Ford Life Plan naming Akemi N. Sullivan, his wife at

the time, to receive his group life benefits.  (Dkt. 10, p. 228).  The Sullivans were

later divorced and the judgment of divorce required Mr. Sullivan designate Kevin

Sullivan (one of his adult sons) as trustee of the minor child to secure the child

support.  (Dkt. 10, p. 232).  On October 10, 1996, John Hancock Mutual Life

Insurance Company wrote to Mr. Sullivan and advised that the November 2, 1989

designation did not comply with the provisions of the judgment of divorce.  (Dkt.

10, p. 227).  On October 11, 1996, Mr. Sullivan signed a new designation of

beneficiary form designating his minor child to receive group life benefits up to

$50,000 and designating Kevin P. Sullivan, Trustee to receive life insurance

benefits in excess of $50,000.  (Dkt. 10, p. 226).  On October 31, 1996, John

Hancock advised Mr. Sullivan that the October 11, 1996 designation was not

---

[2] There is no dispute that ERISA governs the claims in this case and that the
Court has jurisdiction over the ERISA claims.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

14

acceptable because no trustee documents were provided and enclosed another designation of beneficiary form for Mr. Sullivan to complete along with instructions as to the proper method of designating a trustee.  (Dkt. 10, p. 225).

Mr. Sullivan died on February 16, 2007, without ever submitting any designation of beneficiary form subsequent to the October 11, 1996 form that was rejected by John Hancock. Thus, the undersigned agrees with MetLife that no beneficiary form had been accepted by John Hancock at the time of Mr. Sullivan's death and that the rejected beneficiary designations could be used by a court to infer Mr. Sullivan's intent, using equitable principles.  Based on the foregoing, there is no doubt that MetLife appropriately decided that the Estate was not the named beneficiary and that it was subject to competing claims for the life insurance proceeds.  For example, under the MetLife plan, if there is no beneficiary designated and the participant was unmarried at the time of death, the proceeds would be equally distributed among his surviving children.  However, if a court were to decide that there was sufficient intent expressed in the rejected beneficiary designation, Mr. Sullivan's minor daughter could receive $50,000 while her two siblings would equally divide the remaining approximately $43,000.  These possible distribution scenarios are *not* the same and thus, MetLife was subject to competing claims, which supports the notion of applying interpleader principles here.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

15

The undersigned also suggests that the record clearly shows that Mr. Sullivan did not designate a beneficiary under the SSIP plan and the Estate does not dispute this fact. The SSIP plan plainly provides that, where no beneficiary or alternate beneficiary is designated and where the participant is unmarried, the SSIP benefits go to the beneficiary of the life insurance proceeds. In this case, Ford could not distribute the SSIP proceeds to anyone because (1) there was no proper beneficiary of the life insurance policy, and MetLife had determined that the Estate was not a beneficiary of the life insurance policy. Had Ford distributed the SSIP proceeds to the Estate, it too could be subject to claims by other potential claimants to the life insurance proceeds. Based on the foregoing, the undersigned suggests that the Estate is not the beneficiary of the SSIP proceeds and that Ford properly denied the Estate's claim for distribution.

While this case would be procedurally simpler if the defendants had simply filed counterclaims for interpleader, as set forth above, the undersigned suggests that, under the circumstances presented, that the principles underpinning interpleader be applied here. Generally, "[w]hen the court decides that interpleader is available ... it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead...." *Simpson*, at *4, quoting, *High Tech. Prods.*, 497 F.3d at 642; *see also Prudential Ins. Co. of*

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

*Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (holding that "where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy").  Absent bad faith by stakeholder or the possibility that the stakeholder is independently liable, "after the interpleaded funds have been paid into the registry of the Court, discharge should be readily granted."  *Simpson*, at *4, citing, *Kurland v. U.S.*, 919 F.Supp. 419, 421 (M.D. Fla. 1996); *Sun Life Assurance Co. of Canada v. Thomas*, 735 F.Supp. 730, 732 (W.D. Mich. 1990) (A neutral stakeholder asserting no claim to the disputed funds and having surrendered the disputed funds to the custody of the Court should be discharged from the action.").

In this case, the Court suggests that there is no evidence in the record of bad faith by either MetLife or Ford.  The undersigned will address plaintiff's suggestion that they are independently liable for damages and attorney fees separately below.  Given that neither MetLife nor Ford dispute that they owe the funds at issue to someone, have indicated a willingness to pay such funds into the Court, and the lack of any evidence of bad faith, the undersigned suggests that the Court enter an order (1) allowing them to deposit the funds with the Court, plus interest; (2) precluding any claimants from bring any further litigation against them

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

arising from this controversy; and (3) that they be discharged from this matter with prejudice.

      B.    <u>The Estate's Claims for Damages</u>

The Estate also makes a claim for attorney fees and damages against defendants based on the diminution in value of the stock in the SSIP account due to the delay in distribution.  There is some dispute about the scope of the Estate's damages, that is, whether the claim for damages against MetLife is really only a claim for attorney fees or whether the Estate also seeks from MetLife what it calls "consequential" damages (i.e., the diminution claim).  The undersigned suggests that, for purposes of determining the merits of the Estate's damage claim, the scope of the claim is irrelevant because it has no merit.

The Estate argues that MetLife and Ford are fiduciaries under ERISA and under *LaRue v. DeWolf, Boberg & Assoc.*, 552 U.S. 248, 128 S.Ct. 1020 (2008) and applicable Sixth Circuit precedent, they are liable for losses to a defined contribution account even where the entire plan did not suffer a loss.  (Dkt. 22). Defendants argue that (1) the Estate does not have standing to bring a claim for damages under ERISA because it is neither a participant nor a beneficiary, as defined by ERISA; (2) there is no right to consequential damages under ERISA in these circumstances; and (3) the Estate cannot show that defendants were required to disburse any benefit proceeds given the lack of proper beneficiary designation.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

The undersigned suggests that defendants are essentially correct.[3]  The Estate was not designated as a beneficiary and thus, it cannot assert a breach of fiduciary duty claim.  ERISA provides that a participant or beneficiary may recover or enforce benefits under the terms of a plan, or clarify rights to future benefits under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).  ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  As concluded above, Mr. Sullivan never designated the Estate as a beneficiary of his SSIP benefits or his life insurance policy.  And, neither plan provides that, where no beneficiary is designated, the default beneficiary is the estate of the decedent.  While the Estate made a claim for both the life insurance policy proceeds and the SSIP benefits, asserting a claim alone does not turn it into a "beneficiary" as defined by ERISA.

In addition, the undersigned concludes that even if the Estate were a beneficiary as defined by ERISA, it has no claim for consequential damages.  The

---

[3] This is not technically a question of standing as argued by defendants. Rather, as the Sixth Circuit held in *Moore v. Lafayette Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006), where a plaintiff makes a colorable claim that he was an ERISA participant, the ultimate factual finding of the court on the merits of the issue (i.e., that the plaintiff was not a participant under ERISA) does not strip the court of jurisdiction over the case.  Likewise, while the undersigned recommends that the Court conclude that the Estate is not a beneficiary, such a conclusion on the merits of the Estate's claim does not strip the Court of jurisdiction.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

19

Estate's claims for damages against defendants for the loss of value of Ford stock and for attorney fees are outside the scope of permissible remedies available under ERISA. Both the SSIP plan and the life insurance plan are employee benefit plans as defined under ERISA. 29 U.S.C. § 1002(3)(2)(A); 29 U.S.C. § 1002(3)(1); 29 U.S.C. § 1002(1). The Supreme Court has held that although "a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents," ERISA "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, one that is outside the framework of the second subsection and cross-referenced § 409, and one that runs directly to the injured beneficiary." *Varity Corp. v. Howe*, 516 U.S. 489, 511-12 (1996). A claim for breach of fiduciary duty under § 502(a)(3) alleging wrongful denial of benefits is merely "duplicative" of a § 502(a)(1)(B), and is, therefore, not permitted. *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840 (6th Cir. 2007). Where a plaintiff does not allege "systemic, plan-wide claims-administration problems" or a claim that is "distinct and unrelated" to the claim for benefits, the plaintiff has failed "to state a separate claim for breach of fiduciary duty pursuant to § 502(a)(2) and the ERISA remedy for the injury she alleges is that specified in § 502(a)(1)." *Crider v. Life Ins. Co. of North America*, 2008 WL 2782871 (W.D. Ky. 2008), citing, *Gore*, 477

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

at 838-42 (holding that a plaintiff could simultaneously obtain relief under

§ 502(a)(1)(B) and § 502(a)(3), but only because recovery under the former would

not provide adequate relief); *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d

710 (6th Cir. 2005) (putative class action challenging the plan-wide

claims-processing methodology proceeding under § 502(a)(1) and § 502(a)(3));

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998) (challenging

plan-wide methodology for computing benefits); *see also Mass. Mut. Life Ins. Co.*

*v. Russell*, 473 U.S. 134, 140 (1985) (Section 1109 has been interpreted by the

United States Supreme Court as meaning "that recovery for [its violation] inures to

the benefit of the plan as whole" rather than to an individual.").

The Estate asserts that its remedies are not so limited pursuant to the

Supreme Court's recent decision in *LaRue*.  In *LaRue*, the Supreme Court, after

noting the *Russell* holding "that a participant in a disability plan that paid a fixed

level of benefits [cannot] bring suit under [section 1132(a)(2) ] to recover

consequential damages arising from delay in the processing of her claim,"

examined the issue of "whether [§ 1132(a)(2)] authorizes a participant in a defined

contribution pension plan to sue a fiduciary whose alleged misconduct impaired

the value of plan assets in the participant's individual account."  *LaRue*, 128 S.Ct.

at 1022.  The *LaRue* Court held "that although [§ 1132(a)(2) ] does not provide a

remedy for individual injuries apart from plan injuries, that provision does

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id*. at 1026. The Court's holding was based on the "changed landscape" of employee benefit plans, which is now dominated by defined contribution plans rather than defined benefit plans. *Id*. at 1025.

*LaRue* does not save the Estate's claim for breach of fiduciary duty or damages. Applying *LaRue*, in *Dunn v. Harris Corp.*, 560 F.Supp.2d 1260, 1266 (M.D. Fla. 2008), the court addressed the question of whether the plaintiff, a claimed beneficiary to a former employee's retirement account, could assert a claim for benefits based on breach of fiduciary duty. The plaintiff asserted that she was not bringing a claim for benefits, but rather, was bringing a breach of fiduciary duty claim based on the "mishandling" of the beneficiary designation form. The *Dunn* court held that no such cause of action existed. Rather, "it is either a claim for benefits or it is not." *Id*. at 1265, citing, *Hartman v. Wilkes-Barre Gen. Hosp.*, 237 F.Supp.2d 552, 557 (M.D. Pa. 2002) ("ERISA sets forth who is empowered to bring a civil action. Courts have interpreted ERISA to mean that a plaintiff cannot sue for breach of fiduciary duties to obtain denied benefits."). According to the *Dunn* court, the holding in *LaRue* "does not mean that an alleged beneficiary ... can seek benefits based on a breach of fiduciary duty or bring a breach of fiduciary duty claim after being found not to be the rightful beneficiary." *Id*. at 1266. The undersigned suggests that the reasoning in *Dunn* is consistent with *LaRue* and

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

applicable Sixth Circuit precedent and under this reasoning, the Estate's claims for breach of fiduciary duty and consequential damages have no merit.

C.     The Estate's Request for Attorney Fees Under ERISA

Contrary to the Estate's claims, attorney fees are not an element of "damages" under ERISA, rather, ERISA grants courts statutory authority "in its discretion [to] allow a reasonable attorney's fee to either party" in certain actions brought "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(g). Section 1132(g) does not expressly limit an award of attorney fees to a prevailing party. *Evans v. Metropolitan Life Ins. Co.*, 190 Fed.Appx. 429, 437 (6th Cir. 2006). Courts have, however, interpreted the statute to allow an award only to a prevailing party. *Evans*, 190 Fed.Appx. at 437, citing, *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 89 n. 14 (1982); *Cattin v. Gen. Motors Corp.*, 955 F.2d 416, 427 (6th Cir. 1992). Here, if the Court accepts the recommendation that the Estate is not a beneficiary of the life insurance proceeds, the Estate cannot be considered a prevailing party and is, therefore, not eligible for attorney fees under ERISA.

D.     MetLife's Motion for Sanctions

MetLife has moved for sanctions against the Estate's counsel under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case

23

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

> unreasonably and vexatiously may be required by the
> court to satisfy personally the excess costs, expenses, and
> attorneys' fees reasonably incurred because of such
> conduct.

The Sixth Circuit has held that the appropriate inquiry under § 1927 does not require bad faith:

> the question under 28 U.S.C. § 1927 is whether
> Plaintiff's attorney "multiplie[d] the proceedings ...
> unreasonably and vexatiously." **An affirmative answer
> to that question does not require a finding of
> recklessness, subjective bad faith, or conscious
> impropriety; an attorney does not have carte blanche
> to burden the federal courts by pursuing claims that
> he should know are frivolous** ....

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006), quoting, *Haynie v. Ross Gear Div. of TRW*, 799 F.2d 237, 243 (6th Cir. 1986) (internal citations omitted) (emphasis added).

MetLife argues, among other things, that the Estate's claim for money damages against it for diminution of the SSIP benefits is frivolous because MetLife had no duties with respect to the SSIP plan. Rather, it administered claims under a separate employee benefit plan, the Ford Life Plan. ERISA, 29 U.S.C. § 1002(21)(A) defines a fiduciary with respect to an employee benefit plan as a person with discretionary authority with respect to the management, administration of the plan; authority over plan assets; or who renders investment advice to the plan for a fee. With respect to the SSIP plan, MetLife asserts that it is clearly not a

24

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

fiduciary given that it has no administrative responsibilities, exercises no control over the plan assets, and does not provide investment advice.  Thus, according to MetLife, it is not a fiduciary with respect to the SSIP plan and could not possibly be held liable for any claim alleging breach of fiduciary duty.  The undersigned agrees.  All evidence in the record shows that MetLife has nothing to do with the administration of the SSIP plan.

MetLife also argues that the Estate's counsel has pursued a claim for damages (whether based on the diminution in value of the SSIP account or otherwise) against MetLife when such a claim are patently frivolous.  MetLife asserts that such a claim is frivolous because (1) the Estate never pleaded any damage claim against MetLife; (2) with just a small amount of research, the Estate's counsel should have recognized that it had no damage claim against MetLife;[4] and (3) the Estate, through its counsel, waived any damage claim against MetLife at the June 23, 2009 hearing.

In the view of the Estate, it has not made a claim against MetLife for the diminution in value of the stock under the SSIP plan, but rather, its "damages"

---

[4] Before filing its brief on the question of damages and its motion for sanctions, counsel for MetLife contacted the Estate's attorney and outlined reasons why there was no merit to the Estate's claim for damages, giving him the opportunity to withdraw, but counsel would not do so.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

25

claim is for interest[5] and attorney fees.  As set forth above, a claim for attorney fees

under ERISA is not an element of "damages," but rather, it is a discretionary award

that can be made by the court to the prevailing party.  At the June 23 hearing, the

Estate's counsel did not object to MetLife's assertion or the statements of the Court

that no damages claim had been asserted against MetLife.  (Dkt. 20, pp. 32-33, 35-

36).[6]  As such, the Court ordered the Estate and Ford to file supplemental briefs on

the issue of damages by July 23, 2009.  (Dkt. 20, p. 36).  In the view of the

undersigned, the pursuit of any "damages" claim against MetLife, regardless of its

label, was entirely frivolous.  Even if the Estate were determined to be beneficiary

by the Court, there is no reasonable basis in the law to conclude that MetLife could

possibly be liable for any "damages."  The Estate's counsel was given multiple

opportunities to withdraw or clarify its damages claim against MetLife and failed

or refused to do so.  Further, to now argue that its "damages" claim against

MetLife was always merely attorney fees and interest is facetious, given the

statements made in the Estate's supplemental brief, which clearly assert precisely

the same theory of recovery against MetLife as against Ford.  (Dkt. 22).  Under

---

[5] Interest does not appear to be in dispute because MetLife has conceded that
it pays interest.

[6] Under these circumstances, the undersigned suggests that the Estate's claim
that MetLife's brief on the damages issue and its motion for sanctions were
untimely is without merit.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

26

these circumstances, the undersigned concludes that the Estate's counsel did, in fact, unreasonably and vexatiously multiply the proceedings, at a minimum, after the June 23, 2009 hearing.  The undersigned has reviewed the affidavit and supporting billing statements provided by MetLife's counsel and finds the time spent and costs and fees incurred after the June 23, 2009 hearing to have been " reasonably incurred because of such conduct" by the Estate's counsel.  (Dkt. 34). Thus, the undersigned suggests that the Court should grant MetLife's motion for sanctions against the Estate's counsel and order that counsel for the Estate must pay MetLife $7,312.50 in costs and attorney fees pursuant to 28 U.S.C. § 1927.

## V.    RECOMMENDATION

The undersigned **RECOMMENDS** that the Court allow MetLife and Ford to deposit the life insurance proceeds and SSIP stock proceeds with the Clerk of the Court, that MetLife and Ford be **DISMISSED** from this case with prejudice; that any and all claimants are precluded from bringing any further litigation against defendants arising from this controversy; and that counsel for the Estate pay MetLife's attorney fees and costs reasonably incurred after June 23, 2009, in the amount of $7,312.50.  The undersigned further **RECOMMENDS** that the Estate's claims for damages and attorney fees against both defendants be **DISMISSED** with prejudice.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719

28

Date: December 8, 2009                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on December 8, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Michael J. Leavitt, Sherry D. O'Neal, David M. Davis, and Ethan D. Dunn.

                                          s/Tammy Hallwood
                                          Case Manager
                                          U.S. District Court
                                          600 Church Street
                                          Flint, MI 48502
                                          (810) 341-7887
                                          Tammy_Hallwood@mied.uscourts.gov

Report and Recommendation
Motion to Affirm; Motion for Sanctions
*Estate of Sullivan v. Ford Motor Co.*; 08-14719